THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| TA LOVING AND MCCARTHY ) <br> BUILDING COMPANIES JOINT VENTURE ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> HARTFORD FIRE INSURANCE COMPANY ) <br> ) <br> Defendant. ) <br> ) <br> ) | **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

_____

**COMPLAINT**

Plaintiff T.A. Loving and McCarthy Building Companies Joint Venture ("Talco/McCarthy"), complaining of Hartford Fire Insurance Company ("Hartford"), alleges and states as follows:

**PRELIMARY STATEMENT**

1. This is an action for Breach of Contract, Declaratory Judgment, Bad Faith, and Unfair and Deceptive Trade Practices, arising out of the failure of Defendant Hartford to properly investigate, adjust or pay the amounts due to Plaintiff under a builders risk insurance policy.

2. While Talco/McCarthy was building the Eastern Carolina Cardiovascular Institute, a multi-story, state of the art cardiac care facility for Pitt County Memorial Hospital ("the Project"), a fire occurred in the Cardiac Catheterization Laboratory then under construction,

filling the area with smoke, and causing extensive corrosion and other damage to installed equipment and other property covered by the policy. The fire occurred on September 3, 2008. Among other things, by reason of the fire, the Cardiac Catheterization Machine around which the lab is centered was damaged and had to be replaced. Damages resulting from the fire exceed $2.0 million.

3. Although eighteen months have passed since the loss occurred, Hartford has failed to conduct a good faith investigation or properly adjust the loss, misrepresented the status of its investigation, improperly failed to acknowledge coverage, failed to make any payment on the loss, and failed to articulate reasonable grounds for denying coverage.

## PARTIES

4. Plaintiff Talco/McCarthy is a joint venture of T.A. Loving Company, a North Carolina corporation with its headquarters and principal place of business in Goldsboro, Wayne County, North Carolina, and McCarthy Building Companies, Inc., a Missouri corporation, with its principal place of business in Saint Louis, Missouri. The companies, individually, and as a joint venture, are engaged in the business of providing general contracting and construction management services.

5. Talco/McCarthy is the construction manager and constructor of the Project. The Project is owned by Pitt County Memorial Hospital ("PCMH"), and is located at 2100 Stantonsburg Road, Greenville, North Carolina.

6. Defendant Hartford is a foreign domiciled insurance company with its principal place of business in the State of Connecticut, and is authorized to conduct the business of insurance in the State of North Carolina.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, based upon the diversity of citizenship of the parties and the fact that the amount in controversy, exclusive of interest, costs and attorney's fees, exceeds $75,000.

8. Venue is proper in this Court because the headquarters and principal office of T.A. Loving Company is located in Goldsboro, Wayne County, North Carolina and the property insured by Hartford and which is the subject of this action is located in Greenville, Pitt County, North Carolina.

## FACTS

### The Policy

9. Hartford issued a Commercial Inland Marine (Builders Risk) Policy to Talco/McCarthy for the Project, Policy No. 22 MS TA9953, for the policy period February 21, 2006 to February 21, 2009, as amended (the "Policy") (attached hereto as Exhibit A.)

10. The declarations page of the Policy provides that it covers "construction of the new 'Eastern Carolina Cardiovascular Institute Heart Hospital' at 2100 Stantonsburg Road, Greenville, NC."

11. Talco/McCarthy and PCMH are Named Insureds under the Policy.

12. Subcontractors and sub-subcontractors on the Project are Additional Insureds under the Policy.

13. The limit of liability of the Policy is $99,957,319.

14. The Policy is an "all risk" policy covering "direct physical 'loss' to Covered Property caused by any of the Covered Cause of Loss." "Covered Property" is defined under the Policy, in part, as follows:

3

A.1. Covered Property

a. Buildings and structures described in the Schedule and located at the premises specified in the Schedule in the course of construction, including the cost of labor and, if applicable, 'earned profit" as specified in the construction contract. This includes foundations, underground pipes and wiring, machinery and fixtures, and similar property that has become or is intended to become a permanent part of the building(s) or structure(s).

15. "Covered Causes of Loss" means "RISKS OF DIRECT PHYSICAL 'LOSS' to Covered Property from any external cause except those causes of 'loss' listed in the Exclusions." The cause of loss here, fire and smoke, is not listed among the Exclusions, and thus is a Covered Cause of Loss.

16. The Policy also provides coverage for "Soft Costs and Rental Income," which is defined to include the "actual and necessary 'Soft Costs' expenses" and "actual loss of 'Rental Income'" sustained as a result of delay in the completion of "construction operations," as well as "any necessary expenses [incurred] to reduce the amount of 'Soft Costs' or 'Rental Income' payment under this endorsement." The definition of "Soft Costs" includes "additional interest expense," "additional architectural fees, building inspection fees and charges, and administration expenses," "additional legal and accounting costs," and "any other additional fees or expenses endorsed onto this policy."

17. The Policy also includes coverage for "Extra Expense," which includes costs that an insured would not have incurred had there been no direct physical loss to Covered Property from a Covered Cause of Loss.

18. The sublimits of insurance for "Soft Costs" and "Extra Expense" stated in the Policy are as follows: Soft Costs - $9,600,000; Soft Costs – Extra Expense - $3,000,000; and Soft Costs – Contractors Extra Expense - $500,000.

19. All premiums due on the Policy were paid.

4

20. Plaintiff has complied with all applicable conditions of the Policy, or they have been waived, released or are the subject of an estoppel.

**The Project and the Builders Risk Claim**

21. In February 2006, Talco/McCarthy contracted with PCMH to build the Eastern Carolina Cardiovascular Institute at the Pitt County Memorial Hospital, in Greenville, North Carolina. Construction of the Project began in early 2006. The Policy was procured to cover the construction.

22. The Project includes the construction of a Cardiac Catheterization Laboratory for the hospital. An integral part of the Cardiac Catheterization Laboratory is the Catheterization Machine ("Cath Machine"), which was installed in what is referred to as "Cath Lab 3." What is referred to as the Cath Machine is actually a collection of integrated systems, machines and equipment.

23. The Cath Machine is intended to be a permanent part of the facility. It is installed across three rooms which were specifically constructed for its use, including a control room for computer monitors, key boards and similar equipment; an adjoining room to house other computer and support equipment; and the exam room which houses the main part of the machine that directly interfaces with the patient. Among other things, there is lead shielding in the walls, glass and doors to protect against radiation. The HVAC, mechanical and electrical systems are also specifically designed and installed to enable the Cath Machine to properly function, and to protect it from vibration, humidity, temperature fluctuations, dust and other outside influences.

24. The computer equipment which operates the Cath Machine is anchored to the structure using rigid conduit nipples, locknuts and other construction techniques, and hard wired into the electrical system. In the main patient room, the machine is anchored to a specially

5

designed and installed base plate embedded into the concrete floor slab. One of the arms of the machine is also anchored to the concrete floor slab, while another arm is anchored to the ceiling of Cath Lab 3, and from there to the structural steel and concrete slab approximately five feet above the ceiling.

25. Talco/McCarthy constructed the individual rooms, lead shielding, raceways, embeds, and HVAC, mechanical and electrical systems for Cath Lab 3. Phillips Medical Systems installed the Cath Machine under a contract with PCMH. Without the Cath Machine, the Cardiac Catheterization Laboratory would be rendered useless.

26. After installation of the Cath Machine, a sub-subcontractor to Talco/McCarthy's plumbing subcontractor caused a PVC sleeve to catch fire and burn while performing copper pipe brazing operations on September 3, 2008. The burning PVC caused smoke to fill Cath Lab 3, which resulted in extensive corrosion of the Cath Machine as well as other copper, aluminum, galvanized steel, and stainless steel items previously installed.

27. PCMH engaged consultants to examine the equipment and perform environmental testing in areas damaged by the smoke.

28. Construction operations on the Project were delayed as a result of the damage. Talco/McCarthy endeavored to minimize the delay and disruption of the Project and incurred costs to reduce the impact on the Project.

29. Ultimately, it was determined that by reason of the fire the Cath Machine had to be replaced, and other installed property repaired or replaced. PCMH purchased a new Cath Machine and is withholding $1.9 million from Talco/McCarthy's contract payments to cover the cost of the new machine and other expenses related to the fire. Talco/McCarthy has incurred its own losses and has damages (including PCMH's withholding) in excess of $2.0 million as a

result of the accident. Subcontractors and sub-subcontractors on the Project also claim damages as a consequence of the incident.

30. Talco/McCarthy provided timely notice of the claim to Hartford.

31. On November 18, 2008, prior to performing a meaningful investigation, Hartford issued a letter denying coverage, purportedly on the grounds that the Cath Machine does not meet the definition of "Covered Property."

32. Because the Cath Machine was undeniably intended to become a permanent part of the hospital, Plaintiff urged Hartford to reconsider its wrongful denial. Talco/McCarthy provided copies of the design and specifications of the Cath Machine and Cath Lab 3 to enable Hartford to better understand and investigate the loss.

33. In March 2009, Hartford informed Plaintiff that it was reviewing its previous coverage position under a reservation of rights. Hartford was offered access to the site, and encouraged to visit, as well as whatever relevant documentation it requested. Hartford asked for some additional documents, which Talco/McCarthy promptly provided, and in late-March Hartford promised to expedite its consideration of coverage. A Hartford adjustor made a site visit on April 29.

34. In July 2009, however, Hartford informed Talco/McCarthy that while it had obtained the information and documentation requested, it was "still reviewing" the information in order to make a decision regarding coverage. In a July 28, 2009 letter, Hartford stated that it "will move forward with whatever activities we deem necessary for the proper coverage interpretation with expediency," that "it understand[s] the sense of urgency" and "expect[s] our determination to come shortly." Again this was a false promise.

7

Case 5:10-cv-00056-D     Document 1     Filed 02/11/2010     Page 7 of 13

35. Instead of acknowledging its obligations under the Policy, in late August 2009 Hartford referred the issue to counsel who, in turn, sent a laundry list of basic questions about the loss to Talco/McCarthy. The information requested was the type of information that had been available to Hartford for many months.

36. The August letter indicated that after nearly a year of purportedly investigating and adjusting the loss Hartford had, in truth, done little if anything to properly resolve Plaintiff's claims. Rather, Hartford was knowingly engaging in a pattern of obfuscation and intentionally delaying payment of claims it has no reasonable basis to deny.

37. "All risk" builders risk policies, like the Policy, are written to cover accidental physical damage to Covered Property during construction, regardless of which insured (if any) was responsible for the loss. This transfer of risk to the issuing carrier is further intended to permit physical damage to property during construction to be remediated expeditiously, and the project to be closed out promptly, without claims and litigation over responsibility for the damage.

38. By failing and refusing to honor its obligations under the Policy, Hartford has, among other things, engendered litigation between Talco/McCarthy, its subcontractors, PCMH and others. Furthermore, by failing to recognize its coverage obligations, Hartford has caused PCMH to withhold payments otherwise due to Talco/McCarthy, prevented Talco/McCarthy and PCMH from closing out the Project, and otherwise damaged Talco/McCarthy.

39. Hartford is liable for all damages caused by its failure to timely and properly investigate, adjust and pay the claims of Talco/McCarthy including, without limitation, attorneys fees and other costs.

## COUNT I
## BREACH OF CONTRACT

40. Talco/McCarthy incorporates and realleges the foregoing paragraphs 1 through 39 as if set forth fully herein.

41. The Policy is a valid and binding contract.

42. Cath Lab 3 and the Cath Machine are "Covered Property" under the Policy.

43. The direct cause of damage to the Cath Machine and Cath Lab 3 was fire and smoke. Fire is not an excluded Cause of Loss under the Policy, and thus is a Covered Cause of Loss.

44. The damage to the Cath Machine and other property in Cath Lab 3 is covered by the Policy.

45. The Policy obligates Hartford to pay, among other things, all costs incurred to replace the Cath Machine and repair damage to Cath Lab 3, as well as all Soft Costs, Extra Expense and other damages incurred as a result of the fire.

46. Hartford has breached its obligations under the Policy by, among other things, initially denying the claim without having made a good faith investigation, failing to timely investigate, adjust and pay the loss, and failing and refusing to acknowledge any obligations for damage to the Cath Machine and Cath Lab 3. Hartford is also liable for costs and expense incurred by Plaintiffs as a consequence of its failure to timely investigate and adjust the loss.

47. As a direct, proximate and foreseeable consequence of Hartford's breach of the Policy, Talco/McCarthy has suffered damages in excess of $2.0 million.

## COUNT II
## DECLARATORY JUDGMENT

48. Talco/McCarthy incorporates and realleges the foregoing paragraphs 1 through 47 as if set forth fully herein.

49. Upon information and belief, Hartford disputes one or more of Plaintiff's contentions, as set forth above.

50. An actual, present and bona fide controversy exists between Plaintiff and Hartford concerning their respective rights and obligations under the Policy.

51. Declaratory relief from this Court will terminate some or all of the disputes between the parties, including, without limitation, the extent of Hartford's liability for damage to Cath Lab 3 and the Cath Machine and other losses arising as a consequence thereof.

52. A judicial declaration is necessary to establish the rights and duties of Plaintiff and Hartford under the Policy.

## COUNT III
## BAD FAITH

53. Talco/McCarthy incorporates and realleges the foregoing paragraphs 1 through 52 as if set forth fully herein.

54. Hartford's initial denial of the claim without having made a meaningful investigation, and subsequent failure and refusal to timely or properly investigate, adjust and pay Plaintiff's claims was unreasonable, without justification, and in breach of the covenant of good faith and fair dealing.

55. Hartford's unreasonable acts, refusals, and failures to act were consciously calculated to avoid, delay, and ultimately deny coverage on knowingly untenable bases in reckless and wanton disregard of the Plaintiff's rights under the Policy.

56. Talco/McCarthy has suffered and continues to suffer monetary damages as a consequence of Hartford's bad faith conduct, including, but not limited to, the cost of repairing and replacing damaged property; costs incurred by reason of delays and threatened delays to construction and business operations resulting from the loss; costs incurred to prosecute this action; and interest on these sums.

57. As a further consequence of Hartford's bad faith conduct, PCMH has withheld contract balances otherwise due to Talco/McCarthy; Talco/McCarthy has been unable to close out the Project; and Talco/McCarthy has been drawn into litigation relating to the losses at issue. Talco/McCarthy is entitled to recover all costs and expenses flowing from Hartford's bad faith conduct, as well as punitive damages.

## COUNT IV
## VIOLATION OF N.C.G.S. § 75.1-1,
## UNFAIR AND DECEPTIVE TRADE PRACTICES ACT

58. Talco/McCarthy incorporates and realleges the foregoing paragraphs 1 through 57 as if set forth fully herein.

59. Hartford engaged in unfair and deceptive trade practices by, among other things, initially denying the claim without having undertaken a meaningful investigation; failing to acknowledge and act reasonably or promptly upon communications with respect to the claim, and misrepresenting the status and nature of its investigation; failing to promptly or fairly investigate the loss despite knowledge of the urgency of the matter; and failing to effectuate a prompt, fair and equitable adjustment and settlement of Plaintiff's claims, despite the fact that its liability had become clear.

60. Hartford's actions, committed with respect to the business of insurance, are in and affect commerce.

11

61. Hartford's acts and failures to act, as outlined above, constitute unfair and deceptive trade practices. As a direct, proximate and foreseeable result of Hartford's unfair and deceptive trade practices, Plaintiff has suffered injury, including the damages set forth above. Under N.C.G.S. § 75.1-1, Plaintiff is entitled to treble damages, together with the costs and expense, including reasonable attorneys fees, incurred pursing this action.

## REQUEST FOR RELIEF

WHEREFORE, Talco/McCarthy prays judgment in its favor and against Hartford as follows:

A. For money damages in excess of $2.0 million, including all amounts due under the Policy, and all additional damages flowing from the breaches described above, in an amount to be determined at trial;

B. For declaratory relief, as set forth in Count II above;

C. For punitive damages in an amount sufficient to punish Hartford for its breach of the duty of good faith and fair dealing;

D. For treble damages, as allowed under N.C.G.S. § 75.1-1;

E. For pre-judgment interest, together with such other and additional interest to which it is entitled under law;

F. For a jury trial as to all issues do triable;

G. For costs and attorney's fees incurred in this action, under N.C.G.S. § 75.1-1 and the common law of North Carolina; and

H. For such other and further relief as the Court deems just and proper.

This 11th day of February, 2009

  /s/Jay M. Wilkerson
Jay M. Wilkerson, Esq.
NC State Bar No. 19321
Conner Gwyn Schenck PLLC
Olde Raleigh Building
3141 Humphries Wynd
Suite 1000
Raleigh, NC  27612
North Carolina Counsel
919-789-9242

*Counsel for Plaintiff
T.A. Loving & McCarthy Building
Companies, a joint venture*

*Of Counsel*:
David T. Dekker
Laura Thomson
HOWREY LLP
1299 Pennsylvania Ave., NW
Washington, D.C.  20004
Telephone:  (202) 783-0800
Facsimile:  (202) 202-383-6610